UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JEREMY KELLOGG and JONATHAN HARMON,

                              Plaintiffs,             No. 1:23-CV-658 (DNH) (CFH)

         -against-


JONATHAN C. NICHOLS, Individually and
in his capacity as statutory licensing officer
pursuant to Penal Law 265.00(10); 400.00, *et seq.*

                              Defendant.
------------------------------------------------------------------x


# MEMORANDUM OF LAW IN OPPOSITION

# TO DEFENDANT'S MOTION TO DISMISS

**THE BELLANTONI LAW FIRM, PLLC**
***Attorneys for Plaintiffs***
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**abell@bellantoni-law.com**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES.................................................................................................i

I.  NEW YORK'S STATEWIDE AGENDA TO ELIMINATE FIREARMS ................................ 1

II.  THE COMPLAINT STATES A CAUSE OF ACTION ........................................................ 3

III. FEDERAL COURTS MAY PROPERLY ORDER STATE OFFICIALS' COMPLIANCE
     WITH FEDERAL LAW.................................................................................................. 4

IV. THE *ROOKER-FELDMAN* DOCTRINE HAS NO APPLICATION HERE.......................... 5

    A. Defendant Was Performing an Administrative Function, Not A Judicial One ............. 6

    B. The Licensing Process is Not a "State Court Action"................................................... 7

    C. No "Judgment" is Issued and No Appellate Review is Available ............................... 7

V. DEFENDANT IS NOT ENTITLED TO IMMUNITY FOR LICENSING DECISIONS.......... 8

    A. Factors to Determine A 'Judicial Function' ............................................................... 10

    B. Licensing is a Nonjudicial Function.......................................................................... 12

VI. DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY ................................... 16

    A. No Discretion is Allowed When Second Amendment Rights Are Implicated........... 17

    B. Firearm Licensing is a Ministerial Function .............................................................. 17

    C. Qualified Immunity Does Not Apply to Ministerial Functions ................................. 19

    D. The Right to Possess and Carry Firearms is a Clear Legal Right .............................. 20

VII. THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFFS' CLAIMS ............... 21

VIII. PLAINTIFFS HAVE NO OBLIGATION TO SEEK REDRESS IN STATE COURT ........ 23

CONCLUSION.............................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abekassis v. New York City, New York*,
    2021 WL 852081 (2d Cir. Mar. 4, 2021) ................................................................. 15

*Antonyuk v. Bruen*,
    624 F. Supp. 3d 210 (N.D.N.Y. 2022) ..................................................................... 22

*Birmingham v. Ogden*,
    70 F. Supp. 2d 353 (S.D.N.Y. 1999) .................................................................... 6, 24

*Bliven v. Hunt*,
    579 F.3d 204 (2d Cir. 2009) ......................................................................... 9, 10, 11

*Boss v. Kelly*,
    306 F. App'x 649 (2d Cir. 2009) ......................................................................... 12, 13

*Bradley v. Fisher*,
    80 U.S. (13 Wall.) 335, 347 (1871) ......................................................................... 9

*Caetano v. Massachusetts*,
    577 U.S. 411 (2016) ..................................................................................................... 3

*Concey v. New York State Unified Ct. Sys.*,
    2011 WL 4549386 (S.D.N.Y. Sept. 30, 2011) .................................................... 23, 24

*D.C. v. Heller*,
    554 U.S. 570 (2008) ..................................................................................................... 3

*Davis v. Scherer*,
    468 U.S. 183 (1984) ................................................................................................... 20

*Dorsey v. Teresi*,
    26 A.D.3d 635 (3d Dept. 2006) ............................................................................... 12

*Ex parte, Virginia*,
    100 U.S. (10 Otto) 339 (1879) ................................................................................. 10

*Ex parte Young*,
    209 U.S. 123 (1908) ..................................................................................................... 4

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
  544 U.S. 280 (2005) ................................................................................ 5

*Farrelly v. Wells*,
  189 N.Y.S. 34 (Sup. Ct. 1921) ............................................................... 21

*Forrester v. White*,
  484 U.S. 219 (1988) ........................................................................... 10, 11

*Fortuniewicz v. Cohen*,
  54 A.D.3d 952 (2d Dept. 2008) ............................................................. 14

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .............................................................................. 20

*Huminski v. Corsones*,
  396 F.3d 53 (2d Cir. 2005) .................................................................... 11

*Jackson v. Anderson*,
  149 A.D.3d 933 (2d Dept. 2017) ........................................................... 24

*Kaminsky v. Rosenblum*,
  929 F.2d 922 (2d Cir.1991) ................................................................... 20

*Lance v. Dennis*,
  546 U.S. 459 (2006) ................................................................................ 5

*Libertarian Party of Erie Cnty. v. Cuomo*,
  970 F.3d 106 (2d Cir. 2020) ...................................................... 15, 16, 22

*Matter of Panaro*,
  250 A.D.2d 616 (2d Dept. 1998) ........................................................... 14

*McDonald v. Chicago*,
  561 U.S. 742 (2010) .............................................................................. 17

*McShane v. Moldovan*,
  172 F.2d 1016 (6th Cir. 1949) ............................................................. 8, 9

*Miller v. Davis*,
  123 F. Supp. 3d 924 (E.D. Ky. 2015) ...................................................... 4

*Miller v. Davis*,
  2016 WL 11695944 (E.D. Ky. Aug. 18, 2016) ......................................... 5


ii

*Milliken v. Dotson*,
    117 A.D. 527 (1st Dept. 1907) ........................................................... 21

*Monroe v. Pape*,
    365 U.S. 167 (1961) ........................................................................... 24

*New Hope Fam. Servs., Inc. v. Poole*,
    966 F.3d 145 (2d Cir. 2020) ............................................................... 13

*New York State Rifle & Pistol Ass'n, Inc. v. Beach*,
    354 F. Supp. 3d 143 (N.D.N.Y. 2018) ............................................... 24

*NYSRPA v. Bruen*,
    142 S.Ct. 2111 (2022) ................................................................. 1, 2, 3

*Panzella v. Sposato*,
    863 F.3d 210 (2d Cir. 2017) ............................................................... 24

*Papaioannou v. Kelly*,
    14 A.D.3d 459 (1st Dept. 2005) ......................................................... 12

*Patsy v. Board of Regents*,
    457 U.S. 496 (1982) ........................................................................... 24

*Pennhurst State School & Hospital v. Halderman*,
    465 U.S. 89 (1984) ............................................................................. 22

*People ex rel. Ferris v. Horton*,
    147 Misc. 506, 264 N.Y.S. 84 (Co. Ct. 1933) ............................... 18, 19

*People v. Arnold*,
    98 N.Y.2d 63 (2002) ..................................................................... 11, 12

*Pierson v. Ray*,
    386 U.S. 547 (1967) ............................................................................. 8

*Quern v. Jordan*,
    440 U.S. 332 (1979) ............................................................................. 4

*Robbins v. Warhit*,
    198 A.D.3d 790 (2d Dept. 2021) ................................................... 24, 25

*Sanchez v. Kelly*,
    799 N.Y.S.2d 164 (Sup. Ct. 2004) ..................................................... 14

*Scott v. Vill. of Saratoga Springs,*
    131 A.D. 347 (App. Div. 1909) ................................................................ 13

*Sewell v. City of New York,*
    182 A.D.2d 469 (1st Dept. 1992) ........................................................... 12

*State v. Richard F.,*
    180 A.D.3d 1339 (4th Dept. 2020) ......................................................... 12

*Supreme Court of Virginia v. Consumers Union of United States, Inc.,*
    446 U.S. 719 (1980) .................................................................... 10, 11

*Taveras v. New York City, New York,*
    2023 WL 3026871 (S.D.N.Y. Apr. 20, 2023) ........................................... 15

*Town of Castle Rock v. Gonzales,*
    545 U.S. 748 (2005) ........................................................................... 12

*United States v. Wallace,*
    218 F. Supp. 290 (N.D. Ala. 1963) .......................................................... 1

*Va. Office for Prot. and Advocacy v. Stewart,*
    563 U.S. 247 (2011) ............................................................................. 4

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.,*
    535 U.S. 635 (2002) ......................................................................... 5, 6

*Walz v. Town of Smithtown,*
    46 F.3d 162 (2d Cir. 1995) .................................................................... 20

*Whole Woman's Health v. Jackson,*
    142 S. Ct. 522 (2021) .......................................................................... 23

**Statutes**

18 U.S.C. § 922(g) ...................................................................................... 10
42 U.S.C. § 1983 .................................................................................. 23, 24
Article XIII, Section 1 of the New York State Constitution ........................... 14
New York State Judiciary Law § 2 .................................................................. 6
New York State Executive Law § 296(16) ....................................................... 4

**Rules**

CPLR 7801 ............................................................................................. 8, 24

**Other Authorities**

*Catholics in Public Life: Judges, Legislators, and Voters*,
   46 J. Cath. Legal Stud. 211 (2007) ............................................................................... 11

*The Process of Marriage Equality*,
   43 Hastings Const. L.Q. 243 (2016).............................................................................. 5

*The Supreme Court's Catholic Majority: Doctrine, Discretion, and Judicial Decision-Making*,
   85 St. John's L. Rev. 649 (2011) ................................................................................. 11

"Thoughtful people, if they can free themselves from tensions produced by established principles with which they violently disagree, must concede that the governor of a sovereign state has no authority to obstruct or prevent the execution of the lawful orders of a court of the United States.

No legalistic formula is required to express the craving of honest, hard working, God fearing citizens for a moral order logically supported, an attitude long ago expressed when Coke informed King James that there was a law above the King.

In the final analysis, the concept of law and order, the very essence of a republican form of government, embraces the notion that when the judicial process of a state or federal court, acting within the sphere of its competence, has been exhausted and has resulted in a final judgment, all persons affected thereby are obliged to obey it."

*United States v. Wallace*, 218 F. Supp. 290, 291–92 (N.D. Ala. 1963) (granting injunction restraining Governor of Alabama from obstructing implementation of federal district court order concerning enrollment of Negroes in University of Alabama).

Lest there be any doubt, voluntary compliance with *Bruen* by New York State's licensing officers <u>will not happen</u> without a federal court order.

## I.  NEW YORK'S STATEWIDE AGENDA TO ELIMINATE FIREARMS

*NYSRPA v. Bruen*[1] stripped New York State of its stranglehold over the right to 'bear Arms' by striking the State's "proper cause" requirement for concealed carry. In response, the State tightened the noose by, among other restrictions, declaring virtually every private and public area outside of one's home a sensitive or a restricted place where even licensed handgun owners face felony charges. Rather than comply with the Supreme Court's mandate that New York and its 'outlier' may-issue jurisdictions transition from a discretionary and subjective licensing scheme to

---

[1] *NYSRPA v. Bruen*, 142 S.Ct. 2111 (2022).

a shall issue regime with objective factors, the State doubled down on its licensing officers' exercise of "broad discretion." "Zero tolerance" for lawful gun ownership.

On August 31, 2022, Gov. Hochul laid down marching orders for state and local officials, including law enforcement officers and statutory licensing officers, across New York State.[2]

Joined by now-Superintendent of the New York State Police Steven Nigrelli[3], New York City Mayor Eric Adams, the NYPD Police Commissioner, and the Commissioner of the NYS Division of Criminal Justice Services, Gov. Hochul announced the State's collective, united, and adamant refusal to comply with the *Bruen* opinion. Openly defiant to authority of the United States Supreme Court, Gov. Hochul boasted of the State's year-long "partnership" with legal counsel for anti-Second Amendment "advocates" Gifford Law Center and Everytown for Gun Safety, with whom they have "been joined at the hip" to be "ready for [the Supreme Court's opinion in *Bruen*]." [0:00-2:33]. Gov. Hochul confessed, "had there not been a decision by the Supreme Court at the end of June we would not be having this conversation." [2:33]. The *Bruen* decision "***wasn't just negligent it was reprehensible…reprehensible***." [3:49-4:22].

Gov. Hochul complained the *Bruen* stripped the state of the power to decide "maybe not you" because "rational people would agree someone [like you] should not be able to be licensed to carry a weapon…we don't need more guns on our streets we definitely do not…" and insists

---

[2]  https://www.youtube.com/watch?v=gC1L2rrztQs  A true and accurate copy of the YouTube transcript of the August 31, 2022 video is annexed to the Declaration of Amy L. Bellantoni at Exhibit 1.

[3] Nigrelli vociferously thanked Gov. Hochul from the podium as "someone [he] looks up to" for her "leadership on this topic…laser-like focus on ***eradicating guns***, illegal guns, and gun crimes...we appreciate that at the State Police" and vowed "I don't have to spell it out more than this. We'll have ***zero tolerance***. If you violate this law, you will be arrested. Simple as that. Because the New York State Troopers are standing ready to do our job to ensure ... all laws are enforced." *Id.* (emphasis added). [35:54-38:27].

that the 'proper cause' requirement stricken by *Bruen* "was working just fine in our state."[4] [3:55-4:55]. Gov. Hochul boasted that they "didn't back down, we stood up and fought back" and had been working for a year "with experts all over the country" [6:57-7:37] to create restrictions even more onerous than that stricken by the Supreme Court - the CCIA.[5] The already-recessed Legislature was called back for a special session to enact the CCIA. [7:31-8:24]. This coordinated attack on the Second Amendment was intended to apply in "communities all across our state." [8:30-9:11].

As discussed below, federal courts have the authority to enjoin state officials who refuse to adhere to federal laws, including the U.S. Constitution, warranting denial of the State's motion.

## II.  THE COMPLAINT STATES A CAUSE OF ACTION

Plaintiffs have a pre-existing, guaranteed individual right to possess and carry weapons in case of confrontation. *D.C. v. Heller*, 554 U.S. 570, 592 (2008). Plaintiffs' proposed course of conduct is presumptively protected by the plain text of the Second Amendment. *Bruen*, at 2134. The Second Amendment protects "all weapons in common use," which includes handguns. *Bruen*, at 2119 quoting *Heller*, at 627; see also, *Caetano v. Massachusetts*, 577 U.S. 411, 411-412 (2016) (stun guns).

Plaintiffs have no disqualifiers to the lawful possession of firearms under state or federal law, and  lawfully own long arms that were purchased after they passed a federal background check through NICS (National Instant Criminal Background Check System). Complaint at ¶5 [ECF 1].

---

[4] Gov. Hochul complained the Supreme Court "decided to strip away the rights of a governor to protect her citizens from gun violence" – placing her desire for power above the individual rights of this State's citizens. Referring to "safety" close to 30 times, the State's agenda ignores 15 years of Supreme Court jurisprudence unambiguously rejecting 'public safety' justifications for regulations implicating Second Amendment rights. [3:49-4:14].

[5] The Concealed Carry Improvement Act.

By depriving Plaintiffs of the right to possess and carry handguns for self-defense, Defendant violated their Second Amendment rights, as applied to the states through the Fourteenth Amendment. Defendant's enforcement of a discretionary handgun licensing scheme [Penal Law § 400.00, *et seq.,*], enforcement of Penal Law  400.00(1)(b)  and  400.00(1)(o)(v); consideration of non-disqualifying events and enforcement of New York State Executive Law § 296(16); the exercise of his discretion and his denial of Plaintiffs' gun applications as a statutory licensing officer, sufficiently states claims for violations of Plaintiffs' Second and Fourteenth Amendment rights, and warrants a judicial declaration as such and the injunction of the challenged state regulations.

And the inability on Plaintiffs' part to seek monetary damages in at least a nominal amount against Defendant in his individual capacity for the presumed constitutional harms, violates the State and United States Constitutions, as set forth in the Complaint.

## III. FEDERAL COURTS MAY PROPERLY ORDER STATE OFFICIALS' COMPLIANCE WITH FEDERAL LAW

The *Ex parte Young* doctrine permits a federal court to enjoin state officials to conform their future conduct to the requirements of federal law. *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "It rests on the premise - less delicately called a 'fiction,' - that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Office for Prot. and Advocacy v. Stewart*, 563 U.S. 247 (2011); see also, *Miller v. Davis*, 123 F. Supp. 3d 924, 933–34 (E.D. Ky. 2015) (enjoining court clerk, who refused to issue any same-sex marriage licenses, from violating the plaintiffs' federal constitutional rights).[6] See also, Josh Blackman & Howard

---

[6] The district court order was vacated when the Kentucky state senate passed a law removing the name of the County Clerk from marriage license forms, which would have taken effect before the

M. Wasserman, *The Process of Marriage Equality*, 43 Hastings Const. L.Q. 243, 245 (2016) (discussing, *inter alia*, federal district courts authority to enjoin the states' enforcement of bans on same-sex marriage).

Should the Court determine that the challenged state statutes and/or the State's discretionary may-issue licensing scheme, violate the Second Amendment, this Court has the authority to order Defendant, in his capacity as a statutory firearms licensing officer, to refrain from implementing them when considering license applications going forward.

## IV. THE *ROOKER-FELDMAN* DOCTRINE HAS NO APPLICATION HERE

The State's attempts to invoke the *Rooker-Feldman* doctrine by mischaracterizing Plaintiffs' challenge to unconstitutional firearm statutes as "an appeal of a state court decision," should be summarily rejected. [State Br. at p. 19]. The decisions made by Defendant were made in his capacity as a statutory licensing officer; they were not "court decisions" notwithstanding Defendant's unilateral characterization as such, as detailed below.

The *Rooker–Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced"[7] preventing district courts from exercising appellate jurisdiction over state-court judgments – authority that Congress reserved to the U.S. Supreme Court. *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644, n. 3 (2002).

On the other hand, *Rooker–Feldman* does not bar federal judicial review of state executive action, including determinations made by a state administrative agency[8] nor is *Rooker-Feldman*

Sixth Circuit was scheduled to hear oral argument on the appeal. See, *Miller v. Davis*, No. CV 15-44-DLB, 2016 WL 11695944, at *1 (E.D. Ky. Aug. 18, 2016).
[7] *Lance v. Dennis*, 546 U.S. 459, 460 (2006) quoting, *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).
[8] *Verizon*, at 644, n. 3.

implicated when no judgment of a state court is at issue. *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 362 (S.D.N.Y. 1999).

### A.  Defendant Was Performing an Administrative Function, Not A Judicial One

*First,* New York State firearm licensing officers are creatures of statute. "Licensing officer" means the police commissioners of New York City, Nassau County, and Suffolk County, the sheriff of the eastern towns of Suffolk County, the superintendent of the New York State Police for purposes of § 400.01, and elsewhere in the state it means a judge or justice of a court of record[9] having his office in the county of issuance.[10]  Penal Law section 400.00 defines the duties of licensing officers and the scope of their authority, both of which are exactly the same for all licensing officers throughout the State.

*Second,* not all judges in New York State can exercise the powers and functions of a firearm licensing officer – only "a judge or justice of a court of record…"  If firearms licensing was a 'judicial function,' *all* judges would also have licensing authority, which they do not.[11] For example, judges of the town and village courts have no licensing authority because they are not "courts of record."

*Third,* the scope of authority imbued in firearms licensing officers is enumerated in section 400.00 of the Penal Law, not New York State Judiciary Law. Licensing officers are charged with exercising the functions enumerated therein; just as the police commissioners cannot exercise judicial authority while carrying out their licensing duties, neither can an upstate licensing officer. Judicial functions are neither a part of nor granted through the licensing statute.

---

[9] N.Y. Judiciary Law § 2.
[10] Penal Law § 265.00(10).
[11] Penal Law § 265.00(10).

### B.  The Licensing Process is Not a "State Court Action"

Applying for and obtaining a firearm license is an administrative process, not a court action or proceeding. The process is commenced by filing an application with the licensing officer[12], there is no case number or Index number assigned, no pleadings are filed, no discovery or motion practice, no trial, the rules of civil procedure are not applied, there is no plaintiff or defendant, and no 'injured party' seeking relief from a court - there is no 'case or controversy', or 'injury' involved in the licensing process.  See, Bellantoni Ex. 2; Penal Law § 400.00*, et seq.*

To obtain a license, an individual submits an application and is fingerprinted, the "duly constituted police authorities" conducts a background investigation including obtaining the applicant's FBI and NY State criminal history report, and the results of the investigation are forwarded to the licensing officer. *Id.* The licensing officer determines whether the applicant is 'eligible' to hold a license under section 400.00(1) and either issues the license or denies the application.

### C.  No "Judgment" is Issued and No Appellate Review is Available

There is no 'judgment' issued by a licensing officer – the licensing officer must either grant the license applied for, or deny the application for reasons specifically and concisely stated in writing. Penal Law § 400.00 4-b.

A state court 'judgment' is challenged by filing a Notice of Appeal within 30 days of the Notice of Entry and perfecting the appeal in the Appellate Division. Judgments are *appealed*.

But determinations of licensing officers are challenged through a state-created 'special proceeding' to challenge decisions of a "body or officer" under CPLR 7801, *et seq.* ("Article 78")

---

[12]  In NYC, Nassau, and Suffolk, applications are filed with the police department's license division; in Westchester, they are filed with the County Clerk's Licensing Division; and elsewhere in the state, applications are filed with that county sheriff's office.

and must be commenced within 4 months of the date of the decision. Conversely, Article 78 cannot

be used to challenge judicial opinions, rulings, and judgments. CPLR 7801. Decisions "made in a

civil action" must be appealed and determinations made by licensing officers must proceed through

Article 78[13] - further demonstrating that licensing decisions are administrative – and decidedly ***not***

judicial in nature.

Plaintiffs filed a license application and submitted to an administrative licensing process;

they brought no action in state court and received no state court judgment. The *Rooker-Feldman*

does not preclude this Court's adjudication of their claims.

## V.  DEFENDANT IS NOT ENTITLED TO IMMUNITY FOR LICENSING DECISIONS

The doctrine of judicial immunity from federal civil rights suits began with the 1967

Supreme Court decision in *Pierson v. Ray*, 386 U.S. 547 (1967), which found a Mississippi justice

of the peace immune from a civil rights suit when he tried to enforce illegal segregation laws.[14]

Until that time, several courts addressing the issue concluded that Congress never intended

to immunize state-court judges from federal civil rights suits. See, e.g., *McShane v. Moldovan*, 172

F.2d 1016 (6th Cir. 1949). Indeed, the 1871 Act provides that "every person"  who violates the

civil rights of a citizen by acting under state authority is liable for a federal civil action for money

damages. This *judge-made* exception to the landmark Civil Rights Act of 1871, the chief vehicle

for redress of civil rights violations, deprives citizens of redress, encourages flagrant violations of

the Constitution, and ensures that state judges who knowingly, intentionally, and/or recklessly

---

[13] The only exception being orders summarily punishing a contempt committed in the presence
of the court. CPLR 7801.
[14] Robert Craig Waters, *Judicial Immunity vs. Due Process: When Should a Judge Be Subject to
Suit?*, 7 CATO J. 461 (1987) (referencing many dangers of judicial immunity with respect to
corruption and error in the judiciary) at p. 461.

violate individual constitutional rights will not be held accountable. This cloak of unaccountability is self-serving and only reviewable by - other judges. The absence of any constitutional check and balance supports its rejection, at least in this case.

> "In no other area of American life are public officials granted such license to engage in abuse of power and intentional disregard of the Constitution and laws they are sworn to defend. Those who are harmed, no matter how extensive and irreparable the injury, are deprived of any method of obtaining compensation. They are confined to disciplinary actions that only rarely result in the judge's removal from office despite the troubling frequency of judicial abuses (see Alschuler 1972)."

Waters, at 462.

This "sweeping" immunity doctrine is "at odds both with American legal history and the Constitution. Congress never intended to exempt state judges from suit when it passed the 1871 Civil Rights Act. Moreover, the judiciary is wrong when it asserts that immunity was a settled doctrine, incorporated into the 1871 Act by implication. To the contrary, the doctrine in its present form did not exist in the United States or England when the civil rights legislation was passed in 1871." *Id.*

Today, judges generally have absolute immunity from suits for money damages for their judicial actions. *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). The purpose of judicial immunity is to insure that a judge "shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* citing, *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871).

But there are exceptions to the rule, including nonjudicial acts.

"Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent. Whether he was a county judge or not is of no importance. The duty of selecting jurors might as well have been committed to a private person as to one holding

the office of a judge.... That the jurors are selected for a court makes no difference. So are court-criers, tipstaves, sheriffs, &c. Is their election or their appointment a judicial act?" *Forrester v. White*, 484 U.S. 219, 228 (1988) quoting, *Ex parte Virginia*, 100 U.S. (10 Otto) 339, 348. *Forrester* noted that the Supreme Court has "generally been quite sparing in its recognition of claims to absolute official immunity." *Forrester*, at 224.[15]

### A.  Factors to Determine A 'Judicial Function'

Judges do not enjoy absolute immunity from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. *Bliven*, at 209. In determining whether an act by a judge is "judicial," thereby warranting absolute immunity, the court takes a functional approach because immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches. *Id.* For instance, administrative decisions, even though they may be essential to the very functioning of the courts, have not been regarded as judicial acts. *Forrester*, at 228 (no immunity for employment decision); *Bliven*, at 214 (ruling on 18-B vouchers was a case-related judicial act). Judicial immunity has not been extended to judges acting to promulgate a code of conduct for attorneys. See, *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980) (though the issuance of the Bar Code was a proper function of the Virginia Court, propounding the Code was an act rulemaking, not adjudication; judges acting to enforce the Bar Code would be treated like prosecutors, and thus amenable to suit for injunctive and declaratory relief).

---

[15] Concerns like those expressed by the dissent in *Forrester*, the fear of personal liability driving retention of a staff member he wants to fire, will harm the litigants because the quality of the judge's decision-making will decline, are not present here. Adherence to objective, bright-line statutory firearm prohibitors (i.e., under 18 U.S.C. § 922(g)) as the basis for denying firearm applications will provide Defendant, and all other licensing officers, with an absolute defense to the denial of a firearm license. Those having no bright-line prohibitors – like Plaintiffs – shall be issued a license.

The factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, including whether it is a function normally performed by a judge such as issuing a search warrant, granting a petition for sterilization. *Bliven*, at 210 (citing cases). The fact that a proceeding is informal and *ex parte* does not itself imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character. *Id.* citing, *Forrester*, at 227; see also, *Huminski v. Corsones*, 396 F.3d 53, 78 (2d Cir. 2005) (judge's orders banning plaintiff from court facilities were judicial acts because threatening conduct related to a criminal case judge presided over where plaintiff was a defendant).

### B.  Licensing is a Nonjudicial Action

Judges do not generally perform administrative licensing functions; only those judges presiding in statutorily enumerated courts can be licensing officers. The licensing process is not a state court "action," licensing determinations are not judicial decisions, opinions, or judgments, and they are not subject to appeal.

*First,* it is axiomatic that the role of the judiciary is one of neutrality. [16] In our adversarial system of justice, the roles of the parties and the decision-maker are separate and well defined. *People v. Arnold*, 98 N.Y.2d 63, 67 (2002) (citation omitted). And while the law will allow a certain degree of judicial intervention in the presentation of evidence, the line is crossed when the judge takes on either the function or appearance of an advocate. *Arnold*, at 67; see also, *State v. Richard F.*, 180 A.D.3d 1339, 1340–41 (4th Dept. 2020) (Appellate Division "compelled to express…deep concern with the trial judge's  abandonment of her neutral judicial role in this case by calling a

---

[16] René Reyes, *The Supreme Court's Catholic Majority: Doctrine, Discretion, and Judicial Decision-Making*, 85 St. John's L. Rev. 649, 663 (2011) citing, Gregory A. Kalscheur, *Catholics in Public Life: Judges, Legislators, and Voters*, 46 J. Cath. Legal Stud. 211, 211-12 (2007) note 5, at 221 (the primary role of the judge is to use the tools of legal analysis to interpret the Constitution and laws, and to apply those laws as they exist in the context of deciding individual cases).

witness, aggressively cross-examining that witness, and repeatedly overruling respondent's objections to such questions). As described by now-Chief Justice Roberts at his confirmation hearing: "Judges are like umpires. Umpires don't make the rules, they apply them."[17]

Licensing officers are anything but neutral. Since the passage of the Sullivan Law in 1911, this State has engrained the idea that the role of firearms licensing officer is to be the beacon of 'public safety'– a factor thrice rejected by the Supreme Court in the context of Second Amendment rights. Police commissioners and judicial licensing officers alike have been given "broad discretion[18]" to interject their personal views, opinions, moral judgments, into the process to impose subjective determinations of an applicant's morality and dangerousness[19] - they are not 'impartial.' Licensing is quite literally the Applicant versus the Licensing Officer (and in counties where the County also makes a 'recommendation', yet another opinion is given weight against the individual right). The implementation of the "appraisal of facts, the exercise of judgment, and the formation of an opinion…features that typify proper-cause standards like New York's"[20] – was declared unconstitutional by the Supreme Court.[21]

---

[17] Reyes, supra citing Confirmation Hearing on the Nomination of John G. Roberts, Jr. To Be Chief Justice of the United States: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 55 (2005).
[18] Licensing officers are vested with broad discretion in resolving issues regarding the fitness of individuals to possess firearms. *Matter of Dorsey v. Teresi*, 26 A.D.3d 635, 809 N.Y.S.2d 617; *Matter of Papaioannou v. Kelly*, 14 A.D.3d 459; *Sewell v. City of New York*, 182 A.D.2d 469. A benefit is not a protected entitlement if government officials may grant or deny it in their discretion. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citation omitted). "Under New York law, it is well settled that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of the New York City Police Commissioner." *Boss v. Kelly*, 306 F. App'x 649, 650 (2d Cir. 2009).

[19] Penal Law sections 400.00(1)(b), (o)(v).
[20] *Bruen*, at 2138 n. 9
[21] "Apart from a few late-19th-century outlier jurisdictions, American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense." *Bruen*, at 2156.

**Second,** firearm licensing is not a judicial function because not all judges in New York State have the statutory authority to be licensing officers under Penal Law § 265.00(10). Firearm licensing is an extra-judicial function imposed by the State Legislature – and only upon certain government officials, some of whom are not judges at all. *Id.*

**Third,** firearm licensing is not a judicial function because police commissioners, the Suffolk County Sheriff, and the superintendent of the State Police, and the upstate licensing officers all have the same authority and duties. That non-judges are also firearm licensing officers removes the role from that of a 'judicial function.'

**Fourth,** because firearm licensing officers are 'creatures of statute'[22] when performing the duties of a firearm licensing officer, such officers cannot enlarge their role or duties simply because they hold another separate and distinct title. In the performance of their duties, licensing officers have only the authority imbued by the State Legislature under section 400.00. Attempting to place a judicial imprimatur on administrative licensing determinations does not unilaterally transform the scope or functions set forth by the Legislature into a 'judicial function.' [see, e.g., Bellantoni Dec. at Ex. 2]. The courtroom creates only an illusion of fairness and impartiality; when used as part of the licensing process, it provides none of the protections of a judicial court proceeding.

**Fifth,** unlike a judicial proceeding, firearm licensing does not incorporate evidentiary protections, no legal standard is applied, there is no standard of proof, no appellate review is available. Here, the judicial licensing officer failed to apply, consider, or mention Supreme Court precedent or the U.S. Constitution that he took an oath to uphold and protect.[23] [Exhibit 2].

---

[22] See, e.g., *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 149 (2d Cir. 2020) (adoption); *Scott v. Vill. of Saratoga Springs*, 131 A.D. 347, 349, 115 N.Y.S. 796, 797 (App. Div.), amended, 131 A.D. 921 (N.Y. App. Div. 1909), and aff'd, 199 N.Y. 178, 92 N.E. 393 (1910) (municipalities);
[23] Members of the legislature, and all officers, executive and judicial, except such inferior officers as shall be by law exempted, shall, before they enter on the duties of their respective offices, take

The State's representation that Defendant's decision to deny Plaintiffs' firearm license applications was taken "in his judicial capacity" is patently false. [State Br. at p. 1].

The appropriate procedure for seeking review of a determination of a County Court Judge acting in her administrative capacity as the firearms licensing officer under Penal Law §§ 400 and 265 is not by direct appeal but by commencement of a proceeding pursuant to CPLR article 78 in the Appellate Division. *Matter of Panaro*, 250 A.D.2d 616 (2d Dept. 1998).

Defendant was acting in an "administrative capacity" – not a "judicial capacity" – when he denied Plaintiffs' applications. And Article 78 challenges to licensing decisions, the licensing officer is properly named "in his capacity as licensing officer." See, e.g., *Fortuniewicz v. Cohen*, 54 A.D.3d 952 (2d Dept. 2008) (pistol permit applicant commenced article 78 proceeding, seeking review of determination of county court judge "acting in his administrative capacity as county licensing officer"); *Sanchez v. Kelly*, 799 N.Y.S.2d 164 (Sup. Ct. 2004) (Article 78 proceeding challenging the actions of Police Commissioner, Raymond Kelly, "in his capacity as the handgun licensing officer for the City of New York."

And quite unlike the residents of New York City, Nassau, and Suffolk County, who suffer no barrier to holding licensing officials personally liable for violating their Second Amendment rights, Plaintiffs have no such ability. If upstate residents are barred from at least seeking nominal damages from their county's firearm licensing officers, the State need only 'spontaneously' issue the license and declare the plaintiffs' claims moot to avoid constitutional review of the challenged statutes. C.f., *Abekassis v. New York City, New York,* No. 20-3038, 2021 WL 852081, at *1 (2d Cir.

---

and subscribe the following oath or affirmation: "I do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of New York, and that I will faithfully discharge the duties of the office of ......, according to the best of my ability." Article XIII, Section 1 of the New York State Constitution.

Mar. 4, 2021), cert. denied sub nom. *Abekassis v. City of New York, New York*, 142 S. Ct. 344 (2021) (appeal dismissed as moot by City's spontaneous issuance of previously denied firearm license); *Taveras v. New York City, New York*, No. 20 CIV. 1200 (KPF), 2023 WL 3026871, at *7 (S.D.N.Y. Apr. 20, 2023) (declaratory judgment and injunctive relief claims rendered moot by City's spontaneous issuance of previously denied firearm license).

Defendant was acting in his capacity as, and performing the functions of, a statutory firearms licensing officer when he considered and then denied Plaintiffs' applications for a gun license; and Defendant's denial stripped Plaintiffs of the right to possess and carry handguns for self-defense. Because the functions of a statutory firearms licensing officer, which are enumerated in  400.00, are nonjudicial, Defendant is not entitled to absolute immunity.

The Second Circuit's discussion of absolute immunity in *Libertarian Party of Erie Cnty. v. Cuomo*[24] for the judicial licensing officers who denied the plaintiffs' gun license applications, is particularly thin. While the Court found that the written denials were "judicial decisions" (which they could not be as a matter of law – they cannot be *appealed*) the factual basis seemed to boil down to the same functions that a non-judicial licensing officer bases his/her determination on – as imposed by statute. See, Penal Law § 400.00(4-a). A list of documents considered, consideration of the applicant's criminal history, making a determination, and providing a written basis for the denial – are not specific to judicial functions. In that connection, the "Judge's communicating with the United States Attorney for the Northern District of New York" concerning the plaintiff's license application is antithetical to judicial functions, which do not permit extrajudicial fact-finding to create or supplement the record before making a decision.[25]

---

[24] *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 125 (2d Cir. 2020), abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).
[25] *Libertarian Party*, at 125.

It is possible that the information contained herein may provide significantly more analysis than that provided in the Circuit's record on appeal. Moreover, because *Libertarian Party* was decided pre-*Bruen*, the Circuit may be less inclined to find absolute immunity exists in this case particularly because of the Supreme Court's repeated admonishments against the use of discretion in the context of Second Amendment rights. While the Circuit noted that absolute immunity for a judge performing his or her judicial functions is conferred to ensure that judges "feel free to exercise the authority vested in them, without apprehension of personal consequences to himself," as it should, no such freedom exists for government officials to restrict Second Amendment rights, as discussed immediately below.

## VI. DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY

Before the Fourteenth Amendment was enacted, where a state court ignored personal liberties, no redress was possible in the federal courts. The Due Process clause of the Fourteenth Amendment expressly binds state officials to observe the minimum standards of justice and obligates state courts to obey the Bill of Rights. [26] There is no Fourteenth Amendment 'carve out' for state officials who violate Second Amendment rights. Indeed, the constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, at 2156 quoting, *McDonald v. Chicago*, 561 U.S. 742, 780 (plurality opinion) (2010). And when post-ratification history contradicts what the plain text of the Second Amendment says, the text controls. *Bruen*, at 2126.

---

[26] Robert Craig Waters, *Judicial Immunity vs. Due Process: When Should a Judge Be Subject to Suit?*, 7 CATO J. 461 (1987) (referencing many dangers of judicial immunity with respect to corruption and error in the judiciary) at p. 461.

**A.  No Discretion is Allowed When Second Amendment Rights Are Implicated**

The plain text, history, and tradition of the Second Amendment prohibits any discretion on the part of a government official to decide on a case-by-case basis who is and is not worthy of possessing and carrying firearms for self-protection. And 'public safety' justifications have been patently rejected since *Heller.*

In *Bruen,* the Court reiterated *Heller* and *McDonald*'s express rejection of interest balancing and public safety justifications to deprive individuals of Second Amendment rights; the codification of the Second Amendment itself eliminates the government's ability "to decide on a case-by-case basis" who is entitled to its exercise. *Bruen*, at 2129 citing, *Heller*, at 634, *McDonald*, at 790–791 (plurality opinion). An enumerated right has no "constitutional guarantee" when government officials engage in their own assessments of its exercise. *Heller*, at 634. In their concurrence in *Bruen*, Justice Kavanaugh and The Chief Justice highlighted that the Court's "decision addresses only the unusual discretionary licensing regimes, known as "may-issue" regimes, that are employed by 6 States including New York" which he described as "outliers."

New York's outlier licensing scheme, he observed, is "constitutionally problematic because it grants open-ended discretion to licensing officials" which is "inconsistent with the Second Amendment right to possess and carry handguns for self-defense." *Bruen*, at 2161. The 6 outlier states, including New York, were cautioned they "may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements…" *Bruen*, at 2162. The State's continuance of a discretionary scheme calls for its abolition.

**B.  Firearm Licensing is a Ministerial Function**

Even back in 1934, the collective opinion of the judiciary was that having to take on the duties of licensing was a "ministerial duty beneath the role of a judge." Closer in time to the

enactment of New York's Sullivan Law, when its passage turned lawful firearm owners into criminals subject to arrest and prosecution , it was well-recognized that the issuance of a license was a ministerial function of the judiciary. In *People ex rel. Ferris v. Horton*, 147 Misc. 506, 507, 264 N.Y.S. 84, 86 (Co. Ct. 1933), aff'd, 239 A.D. 610, 269 N.Y.S. 579 (App. Div. 1934), the licensing judge "refused to act in a ministerial capacity, and had taken the position that the forms required by statute, as provided, were illegal and inadequate." Judge Van Woert  expressed the collective view of the judiciary that the Sullivan Law was "vulnerable also on the ground that it imposes ministerial duties upon judicial officers. The principle is so well settled that extensive elaboration or citation of authority is not required. It is clear that ministerial duties may not be imposed upon judicial officers."

> "Many a judge, recognizing the necessities of citizens in his jurisdiction, has consented to the exercise of a ministerial function and has issued a license rather than see a proper citizen hampered in pursuit of his vocation, or embarrassed in protection of his home. Such judge has the undoubted right to so act, but it may not be required, and the Legislature has no right to assume that judges will acquiesce in such a requirement, and when the whole statutory scheme, wherein rights are recognized and an exclusive mechanism to provide same is set up, depends wholly upon such voluntary judicial acquiescence, which may not be assumed, the enactment is essentially vicious."

*Ferris*, at 512.

Ascertaining whether the applicant may have been convicted of a prohibiting offense, which can be determined by inspection of her criminal history report, is clearly ministerial. *Ferris*, at 512. Speaking to the "exercise of public and professional duties,"

> It is therefore urgently necessary, for the future of society and the development of a sound democracy, to rediscover those essential and innate human and moral values which flow from the very truth of the human being and express and safeguard the dignity of the person: values which no individual, no majority and

18

no State can ever create, modify or destroy, but must only acknowledge, respect and promote.[27]

It is not for judges or any other government official to decide "on a case-by-case basis" who can and cannot possess and carry firearms for self-defense.

> The very enumeration of the right takes out of the hands of government - even the Third Branch of Government - the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad.

*Heller*, at 634–35.

*Bruen* was decided in June 2022; Defendant's denials of Plaintiffs' applications were rendered on March 23, 2023. [Bellantoni Declaration at Ex. 2]. The moratorium on the use of subjectivity and discretion to abridge Second Amendment rights announced in *Heller* and reiterated in *McDonald* had, for certain, been driven home in *Bruen* – well in advance of Defendant's discretionary denial of Plaintiffs' applications.

### C.  Qualified Immunity Does Not Apply to Ministerial Functions

The plain text, history, tradition – and binding Supreme Court precedent – prohibit government officials from exercising their discretion to affect the rights protected by the Second Amendment, firearms licensing is a ministerial function. All officers, executive and judicial public officials swear an oath to uphold and protect the U.S. Constitution.  See, FN 23. As a statutory "Licensing Officer," Defendant is required to uphold the Second Amendment, which includes the Supreme Court precedential interpretation of it.

---

[27]  Reyes, supra quoting, John Paul II, Encyclical Letter Evangelium Vitae ¶71 (1995). https://www.vatican.va/content/john-paul-ii/en/encyclicals/documents/hf_jp-ii_enc_25031995_ evangelium-vitae.html.

Qualified immunity protects officials who are required to exercise their discretion, to encourage the vigorous exercise of official authority. *Walz v. Town of Smithtown*, 46 F.3d 162, 169 (2d Cir. 1995) (citations omitted). But qualified immunity does not protect ministerial acts. *Walz*, at 169 (denial of qualified immunity where official's issuance of license was tied to a condition lacking legal authority); *Harlow v. Fitzgerald,* 457 U.S. 800, 816 (1982) (observing that qualified immunity is unavailable for ministerial tasks); *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991) (holding that qualified immunity doctrine applies where government official performs discretionary function, as distinct from ministerial function); see also *Davis v. Scherer*, 468 U.S. 183, 196 n. 14 (1984) (discussing ministerial duty exception).

### D.  The Right to Possess and Carry Firearms is a Clear Legal Right

The constitutional right to possess and carry handguns is clearly established under the plain text of the Second Amendment, *Heller*, *McDonald*, and *Bruen*. The prohibition on any discretionary criteria in gun licensing was clearly established in *Bruen*. Defendant is not entitled to qualified immunity for denying Plaintiffs' applications for a firearm license; he was performing a ministerial function and violated a clearly established right.

 Licensing officers – judicial or not - by virtue of their administrative function and authority to affect individual conduct that is "presumptively protected by the Second Amendment"[28], have an affirmative obligation to know and adhere to the "supreme law of the land," and they are bound to recognize and apply it because their determinations "affect the substantial rights" of New York's citizens. C.f., *Farrelly v. Wells*, 189 N.Y.S. 34, 35 (Sup. Ct. 1921) quoting, *Milliken v. Dotson*, 117 A.D. 527 (1st Dept. 1907).

---

[28] *Bruen,* at 2126, 2134.

The State's claim that when Defendant "applied the law to decide Plaintiffs' firearms license applications, he was acting as a judge" falls flat for all of the reasons detailed herein. But following the State's logic, when the NYPD police commissioner or the Suffolk County Sheriff "apply the law to decide a firearms license application" are they also acting as a judge? Of course not. Is the State claiming that "applying the law to a firearms license application" (which Defendant decidedly *did not* do) somehow transforms the administrative licensing function into a judicial one?

When *any* of the licensing officers are performing the statutorily defined functions of a firearm licensing officer under § 400.00, they are acting as administrative licensing officers – not as judges and not as law enforcement, the functions of which (from a common denominator standard) do not include licensing firearms.

## VII.  THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFFS' CLAIMS

The State incorrectly asserts that, "[i]f a state court errs in its rulings, as Plaintiffs contend [Defendant] has done, the traditional remedy has been some form of appeal, including to this Court, not the entry of an *ex ante* injunction." [State Br. at p. 13-14].

***First,*** as already mentioned, licensing officer decisions cannot be appealed, and must be challenged through an Article 78 proceeding. ***Second,*** Plaintiffs are not challenging a 'state court decision,' nor are they seeking 'an injunction against a state court.' [State Br. at p. 14]. Plaintiffs seek, among other relief, to enjoin unconstitutional state firearm regulations.

Plaintiffs are not seeking money damages from Defendant in his official capacity[29] they are seeking at least nominal damages for their claims against Defendant in his individual capacity.

---

[29] A state official sued in his official capacity is entitled to invoke Eleventh Amendment immunity from a claim for money damages. *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

Plaintiffs' official capacity claims seek prospective declaratory and injunctive relief, which is properly sought herein. See, *Libertarian Party*, at 123 ("the Eleventh Amendment does not bar a federal court, in adjudicating federal claims against state officials in any capacity, from granting prospective injunctive relief"); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 105 (1984). And Plaintiffs seek to enjoin state statutes based on the ongoing and continued violation of their Second and Fourteenth Amendment rights.

The State's broad assertion that the Eleventh Amendment 'bars Plaintiffs' claims in their entirety' is simply untrue. [State Br. at 13].  If that were the case, New York's unconstitutional firearm regulations would be insulated from constitutional challenge in every county outside of New York City, Nassau, and Suffolk Counties. *Bruen* itself originated from the denial of the plaintiffs' gun licenses.

Defendant is properly sued in his official capacity as a statutory licensing officer because Defendant is the government official who has the authority to provide redress for Plaintiffs' harms, should their requested equitable relief be granted by the Court. C.f., *Antonyuk v. Bruen*, 624 F. Supp. 3d 210, 232 (N.D.N.Y. 2022) (governor and attorney general were not proper defendants, regardless of whether they were named solely in their official capacity, because they are not involved in the enforcement of the challenged state regulations; but as the enforcer of the challenged criminal regulations, the superintendent of state police was a proper party to be served) (citing cases). Likewise, as the enforcer of the State's licensing scheme, Defendant is the proper party to be named.

**Third,**  *Whole Woman's Health v. Jackson*[30], a preenforcement action to enjoin, *inter alia,* a state court judge from taking any action to enforce a Texas anti-abortion statute, is both factually

---

[30] 142 S. Ct. 522 (2021).

22

and legally inapposite. *Whole Women* itself notes the distinction between allowing federal courts to enjoin "state executive officials from enforcing state laws that are contrary to federal law" and the general prohibition on issuing injunctions against state-court judges and clerks.

But the reasons behind the *Ex parte Young* exception, which does not normally permit federal courts to issue injunctions against state-court judges or clerks, is that those individuals usually do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties. *Whole Woman's*, at 532. But as a licensing officer, Defendant was acting as in the nature of an executive official (like the police commissioners) and *was not* working to resolve any "dispute between parties." And contrary to the State's claim, Plaintiffs are continuing to suffer actual harm as a direct result of Defendant's refusal to issue their licenses.

*Fourth,* Defendant is subject to suit under 42 U.S.C. § 1983, because state officials who are sued in their individual capacities, are 'persons' within the meaning of § 1983. *Concey v. New York State Unified Ct. Sys.*, No. 08 CIV. 8858 PGG, 2011 WL 4549386, at *8 (S.D.N.Y. Sept. 30, 2011). The Eleventh Amendment does not bar suits to impose "individual and personal liability" on state officials under § 1983. *Id.*

## VIII. PLAINTIFFS HAVE NO OBLIGATION TO SEEK REDRESS IN STATE COURT

Plaintiffs have no obligation to seek redress in state court for violations of their constitutional rights.

"In *Patsy*, the Supreme Court held that § 1983, the principle vehicle for challenging state action on federal grounds (and the one used by Birmingham in this action), contains no requirement of exhausting state judicial remedies. *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 363 (S.D.N.Y. 1999) citing *Patsy v. Board of Regents*, 457 U.S. 496, 500, 516 (1982). "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the

federal one is invoked." *Id.* citing, *Monroe v. Pape*, 365 U.S. 167, 183 (1961). Thus, a plaintiff asserting a § 1983 claim is allowed to choose either a state or a federal forum to have his constitutional claims heard. *Id.* citing, *Patsy*, at 506; C.f., *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017), as amended (July 18, 2017) (rejecting county's suggestion that the plaintiff could have sought redress in a state court Article 78 proceeding in the New York Supreme Court).[31]

The State's claim that Plaintiffs were required to seek declaratory relief through an Article 78 proceeding is also false - no such relief is available under CPLR 7801*, et seq.* See, *Robbins v. Warhit*, 198 A.D.3d 790, 791 (2d Dept. 2021) citing, *Jackson v. Anderson*, 149 A.D.3d 933, 934 (2d Dept. 2017).

And because the Article 78 'arbitrary and capricious' standard is lower than the intermediate scrutiny test flatly rejected in *Bruen*[32], a state court Article 78 proceeding is a legally unsound means of redressing Plaintiffs' Second and Fourteenth Amendment harms.

---

[31] Notably, the original *Bruen* complaint, the plaintiffs also sought declaratory and injunctive relief. See, *New York State Rifle & Pistol Ass'n, Inc. v. Beach*, 354 F. Supp. 3d 143, 145 (N.D.N.Y. 2018), aff'd, 818 F. App'x 99 (2d Cir. 2020), rev'd and remanded sub nom. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).
[32] See, e.g., *Robbins v. Warhit*, 198 A.D.3d 790, 791, 156 N.Y.S.3d 76, 78 (2021) (denial of pistol license "was rationally based, and neither arbitrary nor capricious").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety.

Dated: Scarsdale, New York
       August 28, 2023

                            THE BELLANTONI LAW FIRM, PLLC
                            *Attorneys for Plaintiffs*

                            *Amy L. Bellantoni*

                            Amy L. Bellantoni, Bar Roll No. 701018
                            2 Overhill Road, Suite 400
                            Scarsdale, New York 10583
                            abell@bellantoni-law.com

25