UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEREMY KELLOGG and JONATHAN
HARMON,

               Plaintiffs,

         -v-               1:23-cv-658

JONATHAN C. NICHOLS,
individually and in his capacity as
statutory licensing officer pursuant to
Penal Law 265.00(10); 400.00, et seq.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:            OF COUNSEL:


THE BELLANTONI LAW FIRM,   AMY L BELLANTONI, ESQ.
   PLLC
Attorneys for Plaintiffs
2 Overhill Road, Suite 400
Scarsdale, NY 10583

HON. LETITIA JAMES        JAMES M. THOMPSON, ESQ.
New York State Attorney General  MICHAEL G. MCCARTIN, ESQ.
Attorneys for Defendant
28 Liberty Street
New York, NY 10005

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On June 2, 2023, Jeremy Kellogg ("Kellogg") and Jonathan Harmon ("Harmon") (collectively "plaintiffs") filed this action against Judge Jonathan Nichols ("Judge Nichols" or "defendant") in his individual capacity and official capacity as a statutory licensing officer.  Dkt. No. 1.  Plaintiffs' seven-count complaint challenges the constitutionality of New York State's firearm licensing scheme.  *Id.*

On July 13, 2023, Judge Nichols moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).  Dkt. No. 6. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

### A. Statutory Background

"New York maintains a general prohibition on the possession of firearms without a license."  *Frey v. Nigrelli*, --F. Supp. 3d--, 2023 WL 2473375, at *1 (S.D.N.Y. Mar. 13, 2023).  New York Penal Law ("NYPL") § 400.00 is the exclusive statutory mechanism for the licensing of firearms in New York State.  *Paulk v. Kearns*, 596 F. Supp. 3d 491, 498 (W.D.N.Y. 2022) (citing *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85–86 (2d Cir. 2012)).  Under NYPL § 400.00, firearm licenses are limited to applicants who, *inter alia*, are

twenty-one years of age or older, possess "good moral character," and have not been convicted of a felony or a serious offense. *Frey*, 2023 WL 2473375, at *1 (S.D.N.Y. Mar. 13, 2023) (citing N.Y. PENAL LAW § 400.00(1)).

To apply for a firearm license pursuant to NYPL § 400.00, an applicant must first submit "a signed and verified application to a local licensing officer." *Aron v. Becker*, 48 F. Supp. 3d 347, 364, 370 (N.D.N.Y. 2014) (citations omitted). NYPL § 265.00(1) defines a statutory "licensing officer" as follows:

> in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county; in the county of Suffolk the sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county; for the purposes of section 400.01 of this chapter the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance.

N.Y. PENAL LAW § 265.00(10).

Receipt of the application "triggers an investigation by local police who will examine issues such as the applicant's criminal history and moral character." *Aron*, 48 F. Supp. 3d at 370 (citing N.Y. PENAL LAW § 400.00(1)–(4)). Upon completion of the investigation, "[t]he investigating authority reports its results to the licensing officer." *Id.* (citing N.Y. PENAL LAW § 400.00(1)–(4)). Thereafter, the licensing officer reviews the application and

must "either deny the application for reasons specifically and concisely stated in writing or grant the application and issue the license applied for."  N.Y. PENAL LAW § 400.00(4).

## B.  Factual Background

Both Kellogg and Harmon reside in Columbia County, New York.  Compl. ¶ 67.  Plaintiffs separately applied for firearm licenses with the Columbia County Sheriff's Office.  *Id.* ¶¶ 78, 105.  Plaintiffs' applications were assigned to Judge Nichols in his capacity as a statutory licensing officer for Columbia County.  *Id.* ¶¶ 15–17, 79, 106.  After an investigation into plaintiffs' backgrounds and face-to-face interviews, defendant denied both of plaintiffs' applications.  *Id.* ¶¶ 80–81, 89, 107–08, 112.  The denials were based on, *inter alia*, plaintiffs' criminal arrest histories.  *Id.* ¶¶ 95, 112.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)).

## B.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

## IV.  DISCUSSION

Plaintiffs' seven-count complaint asserts claims under the United States Constitution pursuant to 42 U.S.C. § 1983 and the New York State Constitution.  Compl. ¶¶ 131–144.

## A.  § 1983 Claims

Plaintiffs assert six § 1983 claims against Judge Nichols in his individual capacity and official capacity as a statutory licensing officer.  *See* Compl. ¶¶ 131–40, 143–44.  In essence, plaintiffs' claims allege that New York State's "shall-not-issue-unless" firearm licensing scheme violates the Second and Fourteenth Amendments because it "imbues 'broad discretion' in its licensing

officers and imposes subjective criteria upon a preexisting protected right."

*Id.* ¶ 4, 11.

### 1. __Individual-Capacity Claims__

Plaintiffs' individual-capacity claims seek money damages from Judge Nichols.[1]  Pls.' Opp'n, Dkt. No. 14 at 28–29.[2]  Defendant argues that judicial immunity bars suit against him in his individual capacity for such relief. Def.'s Mem., Dkt. No. 6-6 at 18–20.

The doctrine of judicial immunity shields judges from suit to the extent they are sued in their individual capacities.  *Trello v. McKeighan*, 624 F. Supp. 3d 150, 155 (N.D.N.Y. 2022) (citation omitted).  Pursuant to the doctrine, judges are absolutely immune from suits seeking money damages for acts taken within the scope of their judicial responsibilities.  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (collecting cases).

The purpose of judicial immunity "is to ensure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Paulk*, 596 F. Supp. 3d at 496 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347

---

[1]  It does not appear that plaintiffs are seeking injunctive or declaratory relief against Judge Nichols in his individual capacity.  *See* Pls.' Opp'n at 21–22.  In any event, plaintiffs are not entitled to such relief as discussed *infra*.

[2]  Pagination corresponds to CM/ECF.

(1871)). "Judicial immunity therefore does not give way even to allegations of bad faith or malice." *Id.* (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)).

"Judges are not, however, absolutely "immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity."'[3] *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citing *Mireles*, 502 U.S. at 11). To determine "whether a judge's actions are 'judicial,' the Second Circuit has taken a 'functional approach.'" *Paulk*, 596 F. Supp. 3d at 496 (quoting *Bliven*, 579 F.3d at 209). "The relevant factors include the nature of the judge's action, whether the action is ordinarily performed by a judge, whether the parties expect the judge to take such action, and whether the parties dealt with the judge in his judicial capacity." *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "The Second Circuit has noted that '[t]he principal hallmark of the judicial function is a decision in relation to a particular case.'" *Aron*, 48 F. Supp. 3d at 365 (quoting *Bliven*, 579 F.3d at 211).

Notably, the Second Circuit has already addressed judicial immunity in the context of rulings on applications for firearm licenses. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, --U.S.--, 142 S. Ct.

---

[3] Judges are also "not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12 (citations omitted). Plaintiffs do not argue that Judge Nichols acted in "complete absence of all jurisdiction," nor could they make any plausible argument to that effect.

2111 (2022).  In *Libertarian Party of Erie County*, the Circuit found that two judges were acting in their judicial capacities when ruling on applications for New York State firearm licenses.  970 F.3d at 123–25.  In so finding, the Circuit noted that the applications "were ruled on by the judge who was the licensing officer for the applicant's county of residence," and the rulings "directly addressed the specific applications, referred to the requirements of § 400.00, and decided the merits of the applicants' requests."  970 F.3d at 123–25.  Thus, because the judges were acting in their judicial capacities when ruling on the applications, the Circuit held that they were "entitled to absolute immunity from the claims asserted against them in their individual capacities."  *See id.* at 125; *see also Paulk*, 596 F. Supp. 3d at 496–97.

Measured against this case law, Judge Nichols was acting in his judicial capacity when ruling on plaintiffs' applications for firearm licenses.  As a statutory licensing officer for plaintiffs' county of residence, defendant was tasked with reviewing plaintiffs' applications and deciding whether to grant or deny them.  *See* N.Y. PENAL LAW § 400.00(4).  In ruling on plaintiffs' applications, defendant directly addressed the applications, referred to the relevant requirements of law, and decided the merits of the applications.  Compl. ¶¶ 94–95, 111–12.  Accordingly, defendant's rulings on plaintiffs' applications were judicial decisions thereby entitling him to judicial

immunity.  As a result, plaintiffs' § 1983 claims against defendant in his individual capacity shall be dismissed.

### 2.  **Official-Capacity Claims**

Plaintiffs' official-capacity claims request an injunction enjoining state officials from enforcing New York State's firearm licensing scheme and a declaratory judgment that New York State's licensing scheme violates the Second and Fourteenth Amendments.[4]  *See* Compl. ¶¶ 131–40, 143–44; *see also* Pls.' Opp'n at 11.  Judge Nichols argues that plaintiffs' official-capacity claims are foreclosed by Eleventh Amendment immunity, the language of § 1983, the *Rooker-Feldman* doctrine, and qualified immunity.  *See* Def.'s Mem. at 21–31.

"The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of 'sovereign immunity.'"  *Burrell v. DOCCS*, --F. Supp. 3d--, 2023 WL 1861566, at *5 (N.D.N.Y. Feb. 9, 2023) (citing U.S. CONST. amend. XI).  "Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit."  *Id.* (citing *Gollomp v. Spitzer*, 568 F.3d 355, 365–66 (2d Cir. 2009)).

---

[4]  Plaintiffs do not seek money damages from Judge Nichols in his official capacity.  *See* Pls.' Opp'n at 28.  As plaintiffs admit, "[a] state official sued in his official capacity is entitled to invoke Eleventh Amendment immunity from a claim for money damages."  *Id.* at 29 n.29 (citing *Libertarian Party of Erie Cnty.*, 970 F.3d at 123).

Importantly for present purposes, Congress did not abrogate New York State's immunity through § 1983, and New York State has not waived its immunity from § 1983 claims in federal court. *Kisembo v. NYS Off. of Child. & Fam. Servs.*, 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (citing *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 220 (N.D.N.Y. 2014)).

Eleventh Amendment immunity extends to state officials "working on behalf of the state (i.e. in their official capacities)." *Kisembo*, 285 F. Supp. 3d at 519 (quoting *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010)). "A plaintiff, however, may avoid the Eleventh Amendment bar to suit by suing individual state officers in their official capacities, as opposed to the state, provided that the complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *Seneca Nation v. Hochul*, 58 F.4th 664, 670 (2d Cir. 2023) (cleaned up). "Such suits comport with the Supreme Court's decision in *Ex parte Young*, which carved out an exception to Eleventh Amendment immunity in such a case." *Id.* (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Notwithstanding the exception outlined in *Ex parte Young*, the language of § 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. As relevant here,

plaintiffs do not allege that Judge Nichols violated any declaratory decree or that declaratory relief was unavailable.[5]   Consequently, plaintiffs' request for injunctive relief is barred by § 1983.[6]

With respect to declaratory relief, § 1983 does not expressly provide that such relief is available against judges.  *See* 42 U.S.C. § 1983.  However, the language of the statute implicitly recognizes the availability of declaratory relief "depending on the circumstances, which the statute does not delineate." *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 198 (3d Cir. 2000); *see also Lindke v. Tomlinson*, 31 F.4th 487, 490–91 (6th Cir. 2022).  Because of this, the availability of such relief in a suit against a judge turns on whether the judge may properly be named as a defendant.  *Lindke*, 31 F.4th at 491 (citing *Reynolds*, 201 F.3d at 198); *see also Whole Woman's Health*, 595 U.S. at 39–40.  At issue here is whether the interests of Judge Nichols are sufficiently adverse to those of plaintiffs as necessary to give rise to a case or controversy within the meaning of Article III.

---

[5]  Plaintiffs could have sought declaratory relief by filing an Article 78 proceeding in the New York Supreme Court.  *See Aron*, 48 F. Supp. 3d at 370 (noting that an aggrieved pistol permit applicant has well-established appellate recourse under Article 78); *see also Paulk*, 596 F. Supp. 3d at 500; *Johnson-El v. DeProspo*, 2020 WL 5350487, at \*5 n.3 (S.D.N.Y. Sept. 3, 2020).

[6]  In addition, the *Ex parte Young* exception "does not normally permit federal courts to issue injunctions against state-court judges or clerks," because "[u]sually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." *Whole Woman's Health*, 595 U.S. at 39; *see also M.M. v. New York State Ct. of Appeals,* 2022 WL 1565694, at \*2 (2d Cir. May 18, 2022) (summary order).

"The Constitution limits federal courts' jurisdiction to actual cases or controversies." *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (citing U.S. CONST. art. III, § 2). An action for declaratory relief satisfies the case or controversy requirement if the dispute is definite and concrete, touches the legal relations of parties having adverse legal interests, and is real and substantial. *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 353–54 (2d Cir. 2020) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

The Supreme Court has explained that "'no case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'" *Whole Woman's Health*, 595 U.S. at 40 (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984)). This is because under such circumstances, the judge and litigant are not sufficiently adverse to one another. *See id.* at 39–40 (noting that judges "exist to resolve controversies about a law's meaning or its conformance to the Federal and State Constitutions, not to wage battle as contestants in the parties' litigation"); *see also Mendez v. Heller*, 530 F.2d 457, 460–61 (2d Cir. 1976). Therefore, a judge acting in an adjudicative capacity is not a proper defendant in a § 1983 action seeking a declaration that a state statute is unconstitutional. *See Whole Woman's Health*, 595 U.S. at 39–40; *see also Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003); *Reynolds*, 201 F.3d at 199.

To be clear, a § 1983 action seeking a declaration that a state statute is unconstitutional may be proper against a judge who acts as an enforcer or administrator of the statute. *See Lindke*, 31 F.4th at 493; *Reynolds*, 201 F.3d at 199; *In re Justs. of Supreme Ct. of Puerto Rico*, 695 F.2d 17, 24 (1st Cir. 1982). In determining whether a judge is acting as an adjudicator, or an enforcer or administrator of a statute, courts generally look to the procedures the judge is required to follow under the statute and whether the judge played a role in the statute's passage. *See Allen v. DeBello*, 861 F.3d 433, 440–42 (3rd Cir. 2017); *Reynolds*, 201 F.3d at 199. For instance, a judge is more likely to be acting as a neutral adjudicator where the judge does not have the power to initiate proceedings under the statute, is not delegated administrative functions pursuant to the statute, and was not involved in the statute's enactment. *See Allen*, 861 F.3d at 440–42. Relevant here, judges do not depart from their role as adjudicators simply because they have broad discretion under the statute to regulate the behavior of the litigants before them. *See id.* at 442.

Applying these standards, plaintiffs have not alleged facts demonstrating that Judge Nichols is a proper defendant for declaratory relief under § 1983. Plaintiffs do not allege that defendant initiates actions or engages in any independent enforcement activity pursuant to New York's firearm licensing scheme. Nor do plaintiffs allege that defendant played a role in the licensing

scheme's enactment.  Consequently, plaintiffs have failed to show an adverse interest necessary to satisfy Article III's case or controversy requirement.[7] With no entitlement to relief under § 1983, plaintiffs' claims pursuant to the statute shall be dismissed.

### B. State Law Claim

Plaintiffs set forth one state law claim asserting that "[i]mmunity for New York State's statutory licensing officers outside of New York City, Nassau County, and Suffolk County from lawsuits seeking redress for violations of the Second (and Fourteenth) Amendments violates Article I, § 1 of the New York State Constitution."  Compl. ¶ 142.  Having found that dismissal of plaintiffs' federal claims is appropriate, it is necessary to determine whether the exercise of supplemental jurisdiction over this claim is warranted.

"A district court that has dismissed all federal claims in a case relying on federal question jurisdiction may decline to exercise supplemental jurisdiction over any lingering state law claims."  *Sears-Barnett v. Syracuse Cmty. Health Ctr., Inc.*, 531 F. Supp. 3d 522, 546 (N.D.N.Y. 2021) (citing 28 U.S.C. § 1367(c)(3)).  "But first, that court must consider 'the values of judicial economy, convenience, fairness, and comity' before making the choice to keep or dispose of the case.'"  *Id.* (citing *Kroshnyi v. U.S. Pack Courier*

---

[7]  Having so concluded, the Court does not reach the Judge Nichols alternative arguments that plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and qualified immunity.

*Servs.*, 771 F.3d 93, 102 (2d Cir. 2014)).  Consideration of these values "point toward disclaiming jurisdiction in a healthy majority of cases."  *Id.* (citing *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010)).

In the instant case, there is no reason to depart from the standard rule. The relevant values weigh in favor of declining to exercise supplemental jurisdiction over plaintiffs' remaining state law claim.  Accordingly, plaintiffs' state law claim shall be dismissed.

## V.  CONCLUSION

Therefore, it is

ORDERED that

1.  Defendant's motion to dismiss is GRANTED; and

2.  Plaintiffs' complaint is DISMISSED.

The Clerk of the Court is directed to terminate the pending motion and enter a judgment accordingly.

IT IS SO ORDERED.


Dated:  November 21, 2023
        Utica, New York.

David N. Hurd
U.S. District Judge